Tommie Lee Haywood (employee) filed suit for workmen's compensation benefits because of consecutive injuries to her left hand and arm, her right hand and arm, and her back and neck which she allegedly suffered while employed by Russell Corporation (employer) as a sewing machine operator.
In its order, the trial court noted that the parties stipulated that Alabama's Workmen's Compensation Act applied; that the employee's average weekly earnings were $163.54; and that certain of the employee's medical bills had been paid by the employer, but certain others had not been paid pending the decision of the trial court. The trial court found that the employee was entitled to compensation based on a 25% permanent partial disability of the left arm and a 10% permanent partial disability of the right arm. The trial court also awarded the employee compensation for three weeks of temporary total disability, unpaid medical expenses, and attorney's fees. The trial court found that the employee's alleged back and neck injury was not job-related, and no award was made for that injury. The employee appeals.
In reviewing workmen's compensation cases, this court must first look to see if there is any legal evidence to support the findings of the trial court. If such evidence is found, then we must determine whether any reasonable view of that evidence supports the trial court's judgment. Ex parte Eastwood Foods,Inc., 575 So.2d 91 (Ala. 1991).
First, the employee argues that no reasonable view of the evidence supports the conclusion by the trial court that she suffered only three weeks of temporary total disability as a result of her injuries. Instead, the employee contends that the disability period should be about 16 months, which is the time from her last day of employment until she reached maximum medical improvement following surgery to her hands.
This court has held that temporary total disability pertains to the healing period during which an employee is recovering and unable to work. TG Y Stores Co. v. Higdon, 437 So.2d 1035
(Ala.Civ.App. 1983). Patterson v. Clarke County Motors, Inc.,551 So.2d 412 (Ala.Civ.App. 1989). It has repeatedly been held that the "time of temporary total disability" is the recovery period that lasts until maximum medical recovery is reached. Exparte DCH Regional Medical Center, 571 So.2d 1162, 1164
(Ala.Civ.App. 1990).
The employee testified that, as a collar sewer for the employer, she often was required to pull boxes containing clothing materials down an aisle. Sometime in 1985, the employee noticed that a knot had appeared on her left hand, but she did not go to a doctor concerning this problem until September 1985, when her left arm began to bother her. At that time, a Dr. Hillyer examined her left hand, placed it in a brace, and allowed her to return to work on a restricted, light-duty schedule which completely prevented the employee from using her left hand and arm. The employee also testified that due to excessive use her right hand later developed a knot, and this also caused her right arm to bother her. The employee continued working despite her hand and arm problems, but she took an unrelated personal leave from work between May and July 1986. The employee testified that using only her right hand and arm she continued pulling boxes after returning to work, and on October 8, 1986, she turned around to pull the box behind her and felt a sharp pain begin in her back and travel through her neck and head. Since then, the employee has not worked for the employer.
Dr. Hillyer testified in deposition that he operated on the employee's flexor tendons in both hands on May 25, 1987. Dr. Hillyer further testified that she reached maximum medical improvement with respect to both of her hands in February 1988. He then gave her an impairment rating of 25% to her left arm and 10% to her right arm. According to Dr. Hillyer's testimony, the period of time that the employee should have been awarded temporary total disability should have been substantially longer *Page 368 
than three weeks. Therefore, we reverse and remand on this issue for the trial court to make a determination of the length of time that the employee is entitled to be awarded temporary total disability in accordance with TG Y, Patterson, and Exparte DCH Regional Medical Center.
Second, the employee argues that no reasonable view of the evidence supports the trial court's award of permanent partial disability benefits based on the schedule found in §25-5-57(a)(3), Code 1975. Instead, the employee asserts that the award should have been based on her loss of earning ability.
In § 25-5-57(a)(3)a, compensation for permanent partial disability is based on an enumerated schedule, which separately provides for the loss of body parts or members. Section25-5-57(a)(3)g provides for compensation in all other cases based on the employee's loss of earning ability.
In Bell v. Driskill, 282 Ala. 640, 213 So.2d 806 (Ala. 1968), our supreme court stated:
 "[A]lthough the injury itself is to only one part or member of the body, if the effect of such injury extends to other parts of the body, and produces a greater or more prolonged incapacity than that which naturally results from the specific injury, or the injury causes an abnormal and unusual incapacity with respect to the member, then the employee is not limited in his recovery under the Workmen's Compensation Law to the amount allowed under the schedule for injury to the one member."
Bell, 282 Ala. at 646, 213 So.2d at 811.
The employee argues that the injury to her left hand and arm was the cause of the injury to her right hand and arm, and, therefore, she should be allowed to recover using the loss of earning ability method. As stated earlier, the employee testified that the effects of her left hand and arm injury led to the problems with her right hand and arm caused by their overuse in performing her job duties. Dr. Hillyer's testimony supported these claims. In fact, in its order the trial court itself found that the left arm injury "caused or contributed to produce a compensable injury to her right arm. . . ." The employee further testified that her hands continue to hurt; she continues to take medication; and she remains under permanent work restrictions. Dr. Hillyer testified that the employee still is restricted to extremely light-duty activities such as clerical work. The record here is replete with testimony that the employee's arm problems did not begin until after she noticed that knots had appeared on her hands. Also, the injuries in the left hand and arm extended to the right hand and arm through overuse; consequently, the Bell requirement is met in that the effect of one injury extended to other parts of the body.
In United Technologies v. Mims, 549 So.2d 981
(Ala.Civ.App. 1989), this court upheld the trial court's award of workmen's compensation benefits based on the employee's loss of earning ability even though the employee's injury occurred to a scheduled member. In Mims, we quoted Bell and then noted that the effects of the employee's original injury to his left elbow had spread to his left hand, causing the employee to lose some of his ability to grip.
Therefore, we reverse the trial court as to the award of disability benefits based on the scheduled allowance instead of the loss of earning ability, and remand for the trial court to make a determination of the employee's loss of ability to earn and to award benefits accordingly. In so doing, we note that such a determination is to be based on the employee's age, education, work history, and the effect of the injuries on the employee's ability to earn. Hayes International Corp. v.Johnson, 563 So.2d 1052 (Ala.Civ.App. 1990).
Next, the employee argues that no reasonable view of the evidence supports the conclusion of the trial court that the employee's back and neck injury was not job-related. In its order, the trial court found that the testimony relating to the employee's alleged back and neck injury was lacking in credibility and, consequently, denied recovery. The order stated that: *Page 369 
 "[s]he 'mentioned' her back was hurting, but did not report any specifics to indicate an on-the-job back injury accident. In fact, at the time she did not attribute it to the job. She applied for and received benefits under the company's general health policy, which would not have applied to injuries compensable under the Act. She did not give her neurosurgeon a history indicating a job-related back or neck injury. She was later involved in an automobile accident, which certainly injured her back and neck, and confused the medical situation."
The evaluation of oral testimony is within the power of the trial court as the trier of the facts, with the trial court having the responsibility to decide the credibility and correctness of that testimony. Etheridge v. Yeager,465 So.2d 378, 380 (Ala. 1985).
At trial, the employee testified that she injured her back on October 8, 1986, when she turned to pull a box which was behind her. She testified that she was not able to finish her regular shift and that she left at lunch time. The employee also testified that she notified two supervisors that she was leaving early. The record disclosed that, in addition to their regular duties, these supervisors had the responsibility of recording information concerning job-related accidents for the employer's files. One supervisor testified that upon learning the employee's back was hurting, she asked the employee if she had injured her back at work, and the employee said, "I don't know if I hurt it on the job or not." The other supervisor testified that she then immediately approached the employee and, after asking the employee if her back injury was job-related, the employee stated, "no, no, no."
The record also reflects that the two doctors who treated the employee for her back and neck injury had no specifics from the employee as to how she hurt her back, but only had references from her that she did it on the job. Also, the employee testified that she was involved in a car wreck in January 1988 which aggravated her already-injured back but did not worsen her back's overall condition. Based on the testimony, we find there to be legal evidence to support the trial court's finding that the employee did not suffer an on-the-job injury to her back and neck, and that a reasonable view of that evidence supports the trial court's judgment.
Finally, the employee argues that the trial court erred in not finding that a 10% penalty should be assessed against the employer. Section 25-5-59, Code 1975, provides for an employer to be assessed a 10% penalty for failure to timely pay workmen's compensation without good cause. In Crown Textile Co.v. Dial, 507 So.2d 522 (Ala.Civ.App. 1987), this court held that "good cause" exists whenever there is a good faith dispute concerning the employer's liability to the employee. In its order, the trial court found there to be a good faith dispute as to the compensation due the employee.
The employee acknowledges in her brief that there may have been a dispute as to the injuries to her right hand and arm and her back and neck. She contends, however, that no dispute existed as to the injury to her left hand which occurred in 1986. Therefore, the employee asserts that, by waiting until February 1991 to begin paying workmen's compensation benefits, the employer should be assessed the 10% penalty. However, based on our review of the record, we find there to be legal evidence to support the finding of the trial court that a good faith dispute existed.
Based on the foregoing, the judgment of the trial court is due to be affirmed in part, reversed in part, and remanded with directions.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.
THIGPEN, J., concurs.
RUSSELL, J., concurs in part and dissents in part. *Page 370